# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-IA-00738-SCT

*REESE LINDSEY, D.O.*

*v.*

*BEVERLY BUTTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2022 |
| TRIAL JUDGE: | HON. MARGARET CAREY-McCRAY |
| TRIAL COURT ATTORNEYS: | MARVIN L. SANDERS |
| | TAMMYE CAMPBELL BROWN |
| | TOMMIE GREGORY WILLIAMS, JR |
| | ROBERT J. DAMBRINO, III |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT J. DAMBRINO, III |
| ATTORNEY FOR APPELLEE: | MARVIN L. SANDERS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 03/21/2024 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-IA-00882-SCT

*GREENWOOD LEFLORE HOSPITAL*

*v.*

*BEVERLY BUTTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2022 |
| TRIAL JUDGE: | HON. MARGARET CAREY-McCRAY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HARRIS F. POWERS, III |
| | TOMMIE G. WILLIAMS, JR. |
| ATTORNEY FOR APPELLEE: | MARVIN L. SANDERS |
| NATURE OF THE CASE: | CIVIL -WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND RENDERED - 03/21/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. This is a consolidated appeal of two interlocutory appeals, both stemming from the same wrongful-death lawsuit. The lawsuit was brought by Beverly Butts on behalf of the wrongful-death beneficiaries of John Albert Hemphill, Sr. Butts alleged that—four years before the decedent's death—Reese Lindsey, D.O., failed to remove part of a bladder catheter, which caused recurring infection and ultimately death. Lindsey had treated the decedent at Greenwood Leflore Hospital. The complaint also alleged the Hospital staff's treatment of the decedent fell below the standard of care.

¶2. Lindsey moved to dismiss the complaint for failure to serve process.[1] The Hospital moved for summary judgment because Butts failed to establish a medical-negligence claim through medical expert testimony.[2] The trial court denied both motions. Lindsey and the Hospital filed separate petitions for permission to file interlocutory appeals. This Court granted both petitions and consolidated the appeals. Finding that the trial court erred by denying Lindsey's motion to strike the summons and dismiss the complaint, we reverse and render as to Lindsey. Finding that the trial judge erred by denying the Hospital's motion for summary judgment, we reverse and render.

## FACTS

¶3. On February 3, 2021, Butts, on behalf of the wrongful-death beneficiaries of John

---

[1]No. 2022-IA-00738-SCT

[2]No. 2022-IA-00882-SCT

2

Albert Hemphill, Sr., sued Lindsey and the Hospital. The complaint alleged Lindsey treated Hemphill for a urinary-tract infection at the Greenwood Leflore Hospital's emergency room in 2015. The complaint further alleged Lindsey discharged Hemphill with a cut-off Foley catheter still attached to and retracted in his bladder. According to the complaint, Hemphill did not discover the cut-off catheter until four years later. Hemphill continued to suffer urinary-tract infections and septic shock, which the complaint alleged ultimately led to Hemphill's death.

## I. Claim Against Lindsey

¶4. The record reveals Lindsey has never been lawfully served with process, despite the trial court allowing Butts thirty additional days to serve Lindsey—after the lawful period to serve process had expired. Butts sued the hospital and Lindsey on February 3, 2021. Due process is required in all proceedings.[3] Absent lawful service of process, the circuit court lacked personal jurisdiction over Lindsey.

¶5. Summons was first issued on May 25, 2021. The return of service reveals that Butts's counsel attempted to personally serve Lindsey at the same address of the hospital. Butts's attorney was the process server who executed and filed the return of service, recording that "[a]fter diligent Search and Inquiry the within named Dr. Reese Lindsey is not to be found . . . ."

¶6. On May 29, 2021, the circuit clerk issued an "alias" second summons. That summons used Lindsey's mother's residence in Bolivar County. The return of that flawed attempt was

---

[3]*See* Miss. Const. art. 3, § 14.

not filed until August 29, 2021. There is no record evidence that Butts tried to comply with Mississippi Rule of Civil Procedure 4(d)(1)(A)-(B), which requires mailing an additional copy of the complaint and summons to the named defendant. Throughout these proceedings, Butts never requested an extension of the 120-day period before or after the prescribed time.

¶7. The next entry in the docket, without a plea, motion, or affidavit filed, reveals that the clerk of the court entered an "Entry of Preliminary [sic] Default" on January 13, 2022, in which the clerk stated that "summons and citation with the Complaint were served upon Defendants on May 25, 2021 (Exhibit A); and Dr. Reese Lindsey has failed to file an answer hereto and legal delays for answering have elapsed (Exhibit B)." This "Entry of Preliminary Default" was entered relying on the return of the May 25, 2021, summons on which Butts's attorney had written that Lindsey could not be located. Five days later, on January 18, 2022, without plea, motion, or affidavit filed, a "Default Judgment" against Lindsey was signed, but it was not filed of record until January 24, 2022. No evidence in the record reflects a hearing was either requested or conducted prior to the "Default Judgment" entry.

¶8. On January 21, 2022, Lindsey filed notice of a "Motion to Vacate and Set Aside Preliminary Entry of Default" before the "Default Judgment" was filed. The record *sub judice* is absent of any claim that Lindsey was aware of the "Default Judgment" on the date of that filing.

¶9. Lindsey contends that he has never been lawfully served with process. He submitted a sworn affidavit that he resided in Ocean Springs and that he had not resided at his mother's house since graduating from high school. Lindsey specifically argued that because he had

4

not been served in accordance with Rule 4, he was not subject to the jurisdiction of the Leflore County Circuit Court. He specially appeared to contest in personam jurisdiction and to set aside the "Entry of Preliminary Default."

¶10. Then, on February 7, 2022, more than a year after filing the complaint and without seeking approval of the court, a third summons was requested and issued. The summons was to be served at Lindsey's Ocean Springs residence. On March 23, 2022, Lindsey moved to strike the summons and dismiss the complaint. The same date, Lindsey moved for a hearing on his prior "Motion to Vacate and Set Aside Preliminary Entry of Default."

¶11. Despite the aforementioned series of events, Butts argued that Lindsey was properly served on May 29, 2021.[4] Butts's contention was that her attorney properly served Lindsey's mother. Butts argued that service was sufficient because Lindsey's mother was an adult at that address and that she agreed to accept service on Lindsey's behalf.

¶12. On July 1, 2022, the trial judge granted Lindsey's motion to vacate and set aside the "Entry of Preliminary Default"[5] but denied Lindsey's motion to strike the summons and dismiss the complaint without prejudice. Yet the court found that the attempted service on Lindsey was not properly effected through his mother. There is no record evidence that Butts filed for an enlargement of time to serve Lindsey under Mississippi Rules of Civil Procedure 4(h) or 6(b) either before or after the applicable 120-day period. But the trial judge held:

---

[4]The "Plaintiff's Response To Reese Lindsey's Motion to Vacate and Set Aside Preliminary Entry of Default" asserted "[t]hat Defendant Dr. Lindsey was properly served with a copy of the Summons and a copy of the Complaint in this matter on May 29, 2021."

[5]That order was not filed until July 11, 2022.

It is undisputed that Butts attempted to serve Dr. Lindsey with process within the 120-day time limit. The return of service indicated that service was properly completed. Counsel was not, therefore, alerted by written return or otherwise of any potential problem. Plaintiff was not aware of a defect in service of process until Dr. Lindsey's Motion was filed. At that time Plaintiff sought issuance of a new summons and Complaint in order to have Dr. Lindsey served. It cannot be said that Butts did not act diligently. Although service was not properly effected through Dr. Lindsey's mother, the Court finds that Plaintiff had a reasonable belief that service was properly made within the statutory period. Good cause is established. Therefore, the Preliminary Entry of Default and Default Judgment are hereby set aside. Plaintiff shall be allowed an additional thirty (30) days from the entry of this order to serve process.[6]

Lindsey petitioned this Court for permission to file an interlocutory appeal of the trial judge's denial of his motion to strike the summons and dismiss the complaint. This Court granted.

¶13. Lindsey contends that the trial court erred by denying his motion to dismiss the complaint. This Court reviews motions to dismiss de novo. ***Park on Lakeland Drive, Inc. v. Spence***, 941 So. 2d 203, 206 (Miss. 2006). He pleaded that the trial court did not have in personam jurisdiction over him based on failure to serve process. Under Rule 4(h):

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action *shall be dismissed* as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Miss. R. Civ. P. 4(h) (emphasis added); *see also* Miss. R. Civ. P. 6(b).

¶14. "The rule has . . . been interpreted to require that, if the defendant is not served within

---

[6]In the trial court record, during that thirty-day period, no summons was requested or served. *See* Miss. R. Civ. P. 4(d)(1)(B) and/or 6(b). Further, no request was made to supplement the record to show otherwise. Finally, no claim is made in the briefing that Butts served or requested to serve Lindsey during that period.

120 days, the plaintiff must either refile the complaint before the statute of limitations ends or show good cause; otherwise, dismissal is proper." *Webster v. Webster*, 834 So. 2d 26, 28 (Miss. 2002) (citing *Watters v. Stripling*, 675 So. 2d 1242, 1244 (Miss. 1996)). "To establish 'good cause' the plaintiff must demonstrate 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Id.* (internal quotation marks omitted) (quoting *Peters v. United States*, 9 F.3d 344, 345 (5th Cir. 1993)).

¶15.    The complaint was filed on February 3, 2021. Butts's first attempt to serve Lindsey was on May 25, 2021, at the hospital's address Butts's counsel elected. On May 29, 2021, the circuit clerk issued a second "alias" summons for Lindsey at Lindsey's mother's residence in Bolivar County.[7] On February 7, 2022, Butts requested a third summons for Lindsey's Ocean Springs address.

¶16.    Pursuant to Rule 4(d):

>   **(d)    Summons and Complaint: Person to Be Served.** The summons and complaint shall be served together. Service by sheriff or process server shall be made as follows:
>
>>    (1)    Upon an individual an individual other than an unmarried infant or mentally incompetent person,
>>
>>>    (A)    by delivering a copy of the summons and of the complaint to him personally or to an agent authorized by the appointment or by law to receive service of process; or
>>>
>>>    (B)    if service under subparagraph (1)(A) of this

---

[7]Proof of service of that flawed attempt, according to the trial judge, was not filed until three months later, on August 29, 2021.

> subdivision cannot be made with *reasonable diligence*, by leaving a copy of the summons and complaint *at the defendant's usual place of abode* with the defendant's spouse or some other person of the defendant's family above the age of sixteen years who is willing to receive service, *and by thereafter mailing a copy of the summons and complaint* (by first class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left. Service of a summons in this manner is deemed complete on the 10th day *after* such mailing.

Miss. R. Civ. P. 4(d)(1)(A)-(B) (emphasis added).

¶17. Despite the issuance of three summons, Butts never complied with Mississippi Rule of Civil Procedure 4, and the requirements of Rule 4(d)(1)(B) were never met. Butts first attempted to serve a copy of the summons and complaint to the hospital's address, but Lindsey was not found. Upon not finding Lindsey, Butts left the second "alias" summons at an address that was not Lindsey's usual place of abode or residence.

¶18. "A determination of good cause is a discretionary ruling by the trial court and is entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Webster*, 834 So. 2d at 28 (citing *Rains v. Gardner*, 731 So. 2d 1192, 1197 (Miss. 1999)). "To meet the burden of proof of good cause, the plaintiff must demonstrate that a diligent effort was made to effect timely service." *Copiah Cnty. Sch. Dist. v. Buckner*, 61 So. 3d 162, 166 (Miss. 2011) (citing *Foss v. Williams*, 993 So. 2d 378, 379 (Miss. 2008)). No evidence was offered to meet that burden.

¶19. The record is devoid of substantial evidence supporting the trial court's finding that

8

Butts was unaware of the flawed attempt to effect service of process at Lindsey's mother's house. Butts's attorney was the process server who failed to comply with Rule 4. Butts's attorney executed and filed a return of service, averring that he personally delivered a copy of the summons and the complaint to that address. No proof of mailing can be found in the record. During the 120-day service window from filing of the complaint, Butts failed to effect service. The first summons was issued to the hospital's address. Butts's attorney confirmed in writing that Lindsey could not be found there.[8] The second summons was served on Lindsey's mother at her address.

¶20. Butts waited twelve months before causing a third summons to be issued in February 2022, despite later arguing that service was properly effected on May 29, 2021.[9] No return of service can be found in the record after the February 2022 summons was issued. Nonetheless, on July 1, 2022, the trial court permitted Butts thirty additional days from the entry of that order to serve Lindsey. Following the entry of the trial court's order, the record contains no evidence that Butts ever requested a new summons.

¶21. Our rules make no provision for an "Entry of Preliminary Default." Under Mississippi Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to *appear by affidavit or otherwise*, the clerk shall enter his default." Miss. R. Civ. P. 55(a) (emphasis added). These elements must be shown by affidavit or other

---

[8]The reference in the trial court's order confuses the May 25, 2021, service with the May 29, 2021, service.

[9]*See* ¶ 11.

competent proof. Miss. R. Civ. P. 55(a) advisory comm. n. Without affidavit or pleading, Butts offered the *first unserved summons*—by his admission—*filed on May 25, 2021*, to obtain a defective entry of default. The return of service on the first summons at a codefendant's address was insufficient on its face to obtain entry of default.

¶22. With no motion of record, on January 18, 2022, the trial court entered a "Default Judgment" against Lindsey. Under Mississippi Rule of Civil Procedure 55(b), "[i]n all cases the party entitled to a judgment by default *shall* apply to the court therefor." Miss. R. Civ. P. 55(b) (emphasis added). The record is devoid of such application.

¶23. "An on-the-record hearing must be held prior to the entry of default judgment under which unliquidated damages are requested." *Capital One Servs., Inc. v. Rawls*, 904 So. 2d 1010, 1018 (Miss. 2004) (citing *Journey v. Long*, 585 So. 2d 1268, 1272 (Miss. 1991)), *overruled on other grounds by BB Buggies, Inc. v. Leon*, 150 So. 3d 90, 103 (Miss. 2014). "[L]iquidated damages are set or determined by contract, while unliquidated damages are established by a verdict or award and cannot be determined by a fixed formula." *Id.* (footnote omitted) (quoting *Moeller v. Am. Guar. & Liab. Ins. Co.*, 812 So. 2d 953, 959-60 (Miss. 2002)).

¶24. In her complaint, Butts sought "damages in the amount within the jurisdictional limits of this [c]ourt and in excess of the sum of $200,000, such is amount included, but not limited to, compensatory and punitive damages, prejudgment and post judgment interest, attorney's fees, expenses, and costs of the [c]ourt, and that she be awarded all other relief to which she may be entitled." The damages were unliquidated, having not been predetermined or

10

contractually established. The trial court's order entering default judgment against Lindsey did not include a monetary award.

¶25. The trial court erred by not dismissing the complaint against Lindsey for lack of in personam jurisdiction. Because Butts has never legally served process upon Lindsey, the trial court lacked jurisdiction over him. Accordingly, we reverse the decision of the trial court and render judgment dismissing Lindsey from this lawsuit.

**II.     Claim Against the Hospital**

¶26. The Hospital answered the complaint and then filed a motion to dismiss. In its motion, the Hospital asserted that Lindsey was not its employee during the time of Hemphill's treatment. So the Hospital—a governmental entity—could not be held vicariously liable for Lindsey's medical negligence under the Mississippi Tort Claims Act. The trial court denied the motion, finding that the complaint sufficiently alleged separate claims against the Hospital by asserting that the treatment by the Hospital's nurses and staff fell below the standard of care.

¶27. In April 2022, the Hospital moved for summary judgment. The Hospital argued Butts could not establish a medical-negligence claim against the hospital because Butts lacked a medical expert. In interrogatories propounded on Butts in July 2021, the Hospital asked for the names of the witnesses and experts Butts intended to call against the Hospital. Butts responded by declaring that she had not identified any expert witness. But she reserved the right to supplement her response pursuant to a scheduling order.

¶28. Butts did not respond to the Hospital's summary-judgment motion until the day before

the hearing scheduled for June 28, 2022. In the response, Butts simply insisted the summary-judgment motion was "preemptive" because the parties had not agreed to a scheduling order.

¶29. On July 11, 2022, the trial court entered a scheduling order. And on August 19, 2022, the trial court denied the Hospital's motion for summary judgment. The Hospital petitioned for permission to file an interlocutory appeal. This Court granted the petition and consolidated the Hospital's interlocutory appeal with the claim against Lindsey.

¶30. We review the denial of summary judgment de novo. *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 228 (Miss. 2005). Under Mississippi Rule of Civil Procedure 56(b), a defendant "may, at any time, move with or without supporting affidavits for a summary judgment in his favor . . . ." And "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

¶31. The Hospital demonstrated it was entitled to judgment as a matter of law because Butts's discovery responses were factually insufficient to support her medical-negligence claim against the Hospital. Instead, the responses mirrored the generic allegations in her complaint. *See Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013) ("Importantly, the party opposing summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" (quoting Miss.

R. Civ. P. 56(e))).  Further, Butts failed to identify a medical expert that would testify regarding the applicable standard of care and alleged breach of that standard by Hospital employees.  *See Johnson v. Pace*, 122 So. 3d 66, 68 (Miss. 2013) ("Expert testimony establishing the[] elements [of medical malpractice] generally is required for the nonmoving party to survive summary judgment." (citing *Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 180 (Miss. 2007)).

¶32.    In her brief, Butts argues—for the first time on appeal[10]—that the layman's exception applies to cases like this in which a foreign object was left inside a patient.[11]  Such argument would be better suited against Lindsey, who the complaint alleges left the cut-off Foley in Hemphill's bladder.[12]  But Lindsey is not an employee of the Hospital.  Accordingly, the Hospital cannot be liable for his actions.  *Brown v. Delta Reg'l Med. Ctr.*, 997 So. 2d 195, 197 (Miss. 2008) ("[W]hile the state may be sued for the tortious acts of its employees, it may not be sued for the tortious acts of its independent contractors.").

¶33.    Butts brought a *separate* claim against the Hospital's nurses and staff that their treatment of Hemphill fell below the standard of care.  Indeed, this was the very reason the

---

[10] This Court need not consider an issue that has been raised for the first time on appeal.  *Flagstar Bank, FSB v. Danos*, 46 So. 3d 298, 311 (Miss. 2010).

[11] "[T]his Court has long recognized an exception to the general rule requiring a medical expert in 'instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.'" *Smith*, 952 So. 2d at 180 (quoting *Coleman v. Rice*, 706 So. 2d 696,  698 (Miss. 1997)).

[12] "The layman's exception is commonly applied in situations where physicians or hospital staff have left foreign objects inside the patient." *Smith*, 952 So. 2d at 181 (citing *Coleman*, 706 So. 2d at 696).

13

trial court denied the Hospital's motion to dismiss. And "the layman's exception does not apply to . . . claim[s] involv[ing] the rendering of medical services and a nurse's professional judgment for which expert testimony is required." *Claiborne Cnty. Hosp. v. Truitt*, 335 So. 3d 562, 566 (Miss. 2022). Rather, "[t]he rendering of medical services, the diagnosing of medical conditions, and the administration of medical treatment are all matters outside the common knowledge of a layperson." *Id.* (citing *Crosthwait v. S. Health Corp. of Houston, Inc.*, 94 So. 3d 1070, 1076 (Miss. 2012)).

¶34. To prove a medical-negligence case against the Hospital, expert testimony is essential to establish the applicable standard of care, how that standard was disregarded, and how that failure was a proximate contributing cause to Hemphill's death. *Id.* at 567. Indeed, this Court has held that, "[w]hen a plaintiff fails to provide expert testimony establishing a *prima facie* case of medical malpractice, a grant of summary judgment is required." *Id.* at 567; *see also Johnson*, 122 So. 3d at 70 ("In the absence of any expert testimony to support the [plaintiffs'] claim, [the defendant doctor] was entitled to judgment as a matter of law.").

¶35. Despite this clear law, Butts did not respond to the Hospital's summary-judgment motion with affidavits or medical expert testimony to establish the essential elements of her medical-negligence claim. Rather, she merely dubbed the Hospital's motion "preemptive" because no scheduling order had yet been entered. As support she cites Rule 3 of the Local Rules for the Fourth Circuit Court District, which requires the parties to present a scheduling order to the court no later than sixty days after the complaint is filed.[13] But Butts could not

---

[13] But Local Rule 3 also makes clear that, "[i]n the event counsel are unable to agree upon the terms of the scheduling order or fail to submit a proposed order to the Court within

use the lack of a scheduling order as an excuse not to respond to discovery or the Hospital's summary-judgment motion.

¶36. Rule 56(b) permits a defendant to file a motion for summary judgment "*at any time*." Miss. R. Civ. P. 56(b) (emphasis added). A defendant does not have to wait until after a scheduling order has been entered or a discovery deadline has passed. *Johnson*, 122 So. 3d at 69. A decade ago in *Johnson*, this Court rejected an argument very similar to Butts's. *Id.* There, the medical-malpractice plaintiffs—the Johnsons—faced a summary-judgment motion in which the defendant doctor asserted that the Johnsons did not have a medical expert. *Id.* at 67.

¶37. Instead of producing an expert, the Johnsons argued the doctor's summary-judgment motion was premature because, under the Uniform Rules of Circuit and County Court Practice, they were not yet required to designate an expert. *Id.* at 68-69. At the time, Rule 4.04(A) provided: "Absent special circumstances the court will not allow the testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record *at least sixty days before trial*." *Id.* at 69 (quoting former URCCC 4.04(A), now codified as UCRCCC 4.03(A)). "The Johnsons argue[d] that, because no trial date had been set in the case, the sixty-day deadline for designating an expert never expired." *Id.*

¶38. This Court rejected that argument, finding "no authority for the . . . proposition that

---

the time required by this paragraph, discovery shall be limited to the time provided in the Mississippi Rules of Civil Procedure." In other words, Butts cannot blame the Hospital's alleged unwillingness to agree to a scheduling order as an excuse not to provide discovery or respond to a summary judgment motion. Contrary to Butts's assertion, a scheduling order is not an absolute requirement under Local Rule 3—or Mississippi Rule of Civil Procedure 26(c).

a party need not produce an expert witness until that time." ***Id.*** Instead, this Court found the Johnsons were required to support their medical-malpractice claim in order to survive summary judgment. ***Id.*** And because they had no expert, the defendant doctor was entitled to summary judgment. ***Id.*** at 69-70.

¶39. In the case *sub judice*, the Hospital's motion was not "preemptive." It was filed fourteen months after Butts filed suit and nine months after the Hospital propounded discovery requests. The fact Butts needed an expert should have come as no surprise. "From the very moment the suit was filed it was known that an expert witness would be needed to survive summary judgment . . . ."[14] ***Brooks v. Roberts***, 882 So. 2d 229, 232 (Miss. 2004).

¶40. When faced with the Hospital's summary-judgment motion, Butts produced no medical expert testimony nor did she present any evidence to support the medical-negligence claim alleged in her complaint. A defendant may move for summary judgment at any time. The lack of a scheduling order does not relieve plaintiffs of their burden to support their claims with expert testimony to survive summary judgment. Thus, the trial judge should have granted the Hospital's summary-judgment motion. We reverse the denial of summary judgment and render judgment in the Hospital's favor.

¶41. **AS TO NO. 2022-IA-00738-SCT: REVERSED AND RENDERED. AS TO NO. 2022-IA-00882-SCT: REVERSED AND RENDERED.**

    **COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

[14] We reiterate that Butts did not raise the layman's exception in response to the Hospital's summary-judgment motion. Her argument before the trial court was not that she did not need an expert to establish her medical-malpractice claim against the Hospital. Rather, she argued that she need not produce an expert *until* a scheduling order had been entered.

16

**MAXWELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ.; BEAM, J., JOINS IN PART.**

**MAXWELL, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶42. Facing Greenwood Leflore Hospital's motion for summary judgment, Beverly Butts failed in her burden to produce medical expert testimony to support her medical negligence claim. So I agree the Hospital was entitled to summary judgment.

¶43. I also agree that Butts failed to timely serve Dr. Reese Lindsey and that the record does not support the specific reason the trial judge gave for finding good cause existed to extend the deadline to serve process. It is obvious from the trial judge's order that she wrongly believed the failed service attempt was the result of a third-party process server. *See* ***Collins v. Westbrook***, 184 So. 3d 922, 930-31 (Miss. 2016) (finding good cause existed when the failure to timely serve process "was caused entirely by 'the conduct of a third person'" (quoting ***Holmes v. Coast Transit Auth.***, 815 So. 2d 1183, 1186 (Miss. 2002))). But the record indicates otherwise—that Butts's counsel himself acted as the process server.

¶44. That said, with respect for the majority, I would not render on this issue. Instead, because of the judge's mistaken belief that process had been served by a third party, I would remand the good-cause issue to the trial court.

¶45. In response to Dr. Lindsey's motion to dismiss, Butts's counsel raised several fact questions whether good cause still existed. First, there is the question of diligence and whether Butts's counsel should have relied on the online business search to yield a residential address. Second, there is the question of whether counsel could have ascertained from Dr.

17

Lindsey's mother that Dr. Lindsey no longer resided there. Butts's counsel asserted that, at the time he served Betty Lindsey, he "was not informed that [Dr.] Lindsey was no longer a resident of that location." But he did not say whether he in fact *asked* Betty if her son lived there. Rather, he says Betty "stated that she could and did accept service[.]" That is certainly not the same as Betty stating that her Cleveland home was her adult son's usual place of abode.

¶46. While I agree the ultimate outcome does not appear favorable to Butts because of her unlikely ability to show good cause, our precedent says these are fact-findings left to the trial court's discretion. *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 38 (Miss. 2007).[15] They are not for this Court to resolve on appeal. Yet the majority acts as fact-finder and concludes the record is completely devoid of any evidence of good cause. Again, this is not our role. Instead, we are to determine if the trial judge abused her discretion—not take fact-intensive, discretionary calls away from the trial court if we simply disagree with her assessment of the facts.

¶47. For this reason, I dissent in part. Instead of rendering on the good-cause issue, I would remand the case to the trial court.

**KITCHENS AND KING, P.JJ., JOIN THIS OPINION. BEAM, J., JOINS THIS OPINION IN PART.**

---

[15] "This Court leaves to the discretion of the trial court the finding of fact on the existence of good cause or excusable neglect for delay in serving process under Rule 4(h)." *Long*, 969 So. 2d at 38. And we will reverse only when "such discretion is abused or is not supported by substantial evidence[.]" *Id.*